**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD WISE** | : | **NO.: 1-10-CV-02094** |
| **RICHARD REITTER** | : | |
| **JOSHUA MALONEY** | : | **JUDGE CONNER** |
| **STEPHEN DUBE** | : | |
| **Plaintiffs** | : | **MAGISTRATE JUDGE METHVIN** |
| | : | |
| **v.** | : | |
| | : | |
| **HAYLEY WILLIAMS**[1] | : | |
| **JOSH FARRO** | : | |
| **TAYLOR YORK** | : | |
| **JEREMY DAVIS** | : | |
| **ZAC FARRO** | : | |
| **FUELED BY RAMEN** | : | |
| **WARNER MUSIC GROUP** | : | |
| **ATLANTIC RECORDS** | : | |
| **Defendants** | : | |
| | : | |

**REPORT AND RECOMMENDATION ON**
**DEFENDANTS' MOTION TO DISMISS AND/OR TRANSFER VENUE**
(***Doc. 14***)

This copyright infringement suit involves the song "Starlighter," written and recorded in 2005 by the rock band Tenspoke Indies. Plaintiffs are the individual members of the band. Defendants are members of the rock band Paramore,[2] along with record label Fueled by Ramen, Atlantic Records, and Warner Music Group.

---

[1] Ms. Williams' name was spelled "Haley" in the complaint, but the correct spelling is "Hayley." (Doc. 20, at 1 n.1.)

[2] On December 12, 2010, two months after the complaint was filed, brothers Josh and Zac Farro left Paramore. Announcement, Paramore Blog (December 18, 2010), http://www.paramore.net/blog/announcement/.

Plaintiffs allege that defendants "copied and incorporated substantial original portions" of "Starlighter" into Paramore's song "The Only Exception," and there is "substantial similarity" between the two songs in terms of "introductions, arrangements, the chord progression, the key, the melody, the lyrical theme, the rhythm[,] and the tempo."[3] Plaintiffs contend that Paramore has recorded, marketed, and performed the song in violation of Tenspoke Indies' copyright at least since September 29, 2009.[4] Plaintiffs seek the recall and impoundment of all copies of "The Only Exception," an injunction against further infringement, damages for lost profits, statutory and punitive damages, and attorneys fees.

Defendants have filed a motion to dismiss or alternatively for transfer of venue.[5] The motion has been referred to the undersigned magistrate judge for a report and recommendation.[6]

### Issues Presented

Defendants seek dismissal on purely procedural grounds:

1.     all defendants seek dismissal based on improper venue under Rule 12(b)(3).

---

[3] Compl. ¶¶ 34, 35, 37, Doc. 1.

[4] Id. ¶ 41, Doc. 1.

[5] Doc. 14.

[6] On March 14, 2011, Judge Conner referred the motion to Magistrate Judge Prince for a Report and Recommendation. (Doc. 26.) The motion was subsequently referred to the undersigned magistrate judge.

2.      the individual defendants seek dismissal for lack of personal jurisdiction under Rule 12(b)(2);

3.      defendants alternatively move for transfer to the U.S. District Court for the Middle District of Tennessee pursuant to 28 U.S.C. §1404(a).

### *Findings and Conclusions*

## I. Facts of the case

The facts as recounted here are taken from the complaint and exhibits to the parties' briefs. Allegations in the complaint are assumed to be true. The facts are detailed only as necessary for disposition of the pending motion.

All four plaintiffs are residents of Florida.[7] Their band, Tenspoke Indies, was formed and is located in Tampa, Florida.[8] The five individual defendants reside in Franklin, Tennessee, where they also keep their business records.[9] Plaintiffs allege that the individual defendants also maintain residences in Los Angeles, California.[10] Defendant Fueled by Ramen, LLC (FBR) is a business entity with a principal place of business in Tampa, Florida.[11] Defendant Warner Music Group Corporation (Warner) is a

---

[7] Compl. ¶¶ 1–4, Doc. 1.

[8] *Id.* ¶ 16.

[9] Williams Decl. ¶¶ 2, 6, Jan. 14, 2011, Doc. 15-3; J. Farro Decl. ¶¶ 2, 5, Jan. 18, 2011, Doc. 15-4; York Decl. ¶¶ 2, 4, Jan. 13, 2011, Doc. 15-5; Davis Decl. ¶¶ 2, 4, Jan. 13, 2011, Doc. 15-6; Z. Farro Decl. ¶¶ 2, 4, Jan. 2011, Doc. 15-7.

[10] Compl. ¶¶ 5–9, Doc. 1.

[11] *Id.* ¶ 10.

business entity with a business address in New York, New York.[12] Defendant Atlantic

Recording Corporation (Atlantic) is a wholly owned subsidiary of Warner with a business

address in New York, New York.[13]

After Tenspoke Indies wrote "Starlighter" in 2005, they recorded and released it

on a four-song EP in 2006 and a full-length CD in 2007.[14] They performed the song at

venues around the United States and distributed it nationally, selling it at performances, in

stores, and through online music vendors like iTunes.[15] Tenspoke Indies also sent a

marketing e-mail to individuals at a number of record labels, including Steve Robertson,

Director of A&R for Atlantic Records.[16] Atlantic is the distributor of Paramore's sound

recordings.[17] The e-mail included links to and information about "Starlighter."[18]

In her statement, Hayley Williams describes how Paramore composed and

recorded "The Only Exception:"[19]

---

[12] *Id.* ¶ 11.

[13] *Id.* ¶ 12.

[14] *Id.* ¶¶ 17, 18, 20.

[15] *Id.* ¶¶ 21, 23.

[16] *Id.* ¶¶ 24–25.

[17] *Id.* ¶ 29.

[18] *Id.* ¶¶ 24–27.

[19] Williams Decl. ¶¶ 4–6, Doc 15-3, at 2. *See also* J. Farro Decl. ¶¶ 3–4, Doc. 15-4.

4.     The song "The Only Exception" was written and recorded in Franklin, Tennessee, and Malibu, California. I was in Tennessee when I received an email from Josh Farro on or about March 5, 2009, attaching a recording of chord progressions he had created that ultimately became the song "The Only Exception." I wrote the melody and lyrics of a verse and a chorus of the song. Josh Farro and I then recorded a rough demonstration recording of the song in Franklin, Tennessee.

5.     During preproduction for Paramore's album *Brand New Eyes*, I played an acoustic unfinished version of the song for Atlantic Records' Steve Robertson at the Toby Mac Studio in Franklin.

6.     I added the second verse and wrote the bridge for the song later in Malibu, California. The final version of the song was recorded by Paramore at a studio in Malibu, California.

Around September 29, 2009, Paramore, by and through its dealings with FBR, Warner, and Atlantic, released an album containing the song "The Only Exception."[20] The album peaked at #2 on the Billboard Top 200 Albums, a success that was due in large part to the popularity of "The Only Exception."[21] Sales, performances, marketing, and radio play of "The Only Exception" have occurred throughout the United States, including in the Middle District of Pennsylvania.[22] Paramore's website allows visitors, including those

---

[20] Compl. ¶ 31, Doc. 1.

[21] *Id.*

[22] *Id.* ¶ 32.

from Pennsylvania, to listen to "The Only Exception," read its lyrics, and purchase both the album that contains it and other band-related merchandise.[23]

As noted above, plaintiffs claim a copyright violation based upon "substantial similarity" between "Starlighter" and "The Only Exception" in terms of "introductions, arrangements, the chord progression, the key, the melody, the lyrical theme, the rhythm[,] and the tempo."[24]

## II. Procedural history

Plaintiffs initiated this suit on October 8, 2010 with the filing of their complaint.[25] On January 19, 2011, defendants filed a motion to dismiss[26] for lack of personal jurisdiction or for improper venue, or in the alternative for transfer, as well and a brief in support[27] and attached exhibits regarding the jurisdictional question.[28] They filed a revised brief in support on January 24.[29] On February 7, plaintiffs filed a brief in opposition[30] and

---

[23] Lavis Decl. ¶¶ 8–11, Doc. 23, at 4.

[24] Compl. ¶¶ 34, 35, 37, Doc. 1.

[25] Doc. 1.

[26] Doc. 14.

[27] Doc. 15.

[28] Docs. 15-1 to 15-20.

[29] Doc. 20.

[30] Doc. 22.

supporting exhibits,[31] to which defendants filed a reply brief[32] on February 24. The pending motion is now ripe for adjudication.

## III. Discussion

### (A) Personal jurisdiction

Personal jurisdiction "represents a restriction on judicial power . . . as a matter of individual liberty," and relates to whether a court may permissibly exercise decision-making power over a defendant. *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Ins. Corp. of Ireland v. Comagnie dex Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). Because the question is one of individual liberty, a defendant may invoke jurisdictional limitations or waive them, and bears the burden of raising the issue of a court's lack of personal jurisdiction. *Id.*; *Clark v. Matsushita Elec. Indus. Co.*, 811 F. Supp. 1061, 1064 (M.D. Pa. 1993) (citing Fed. R. Civ. P. 12(h)(1) (indicating that the defense of lack of personal jurisdiction is waivable)); Fed. R. Civ. P. 12(b)(2) (allowing a defendant to move to dismiss for lack of personal jurisdiction).

Once a defendant has raised a jurisdictional defense, the burden shifts to the plaintiff to "prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (alteration in original) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996);

---

[31] Docs. 23, 24.

[32] Doc. 25.

citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). In the absence of

an evidentiary hearing, a plaintiff "need only establish a prima facie case of personal

jurisdiction," because as with Rule 12(b)(6) motions to dismiss, "a court is required to

accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the

plaintiff." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir.

2007) and *Toys "R" Us, Inc. v. Step Two S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)).

Because Pennsylvania's long-arm statute authorizing personal jurisdiction, 42 Pa.

Cons. Stat. Ann. § 5322(b) (West 2011), is coextensive with the Due Process Clause, "the

statutory assessment of jurisdiction collapses into the constitutional one." *Clark v.

Matsushita Elec. Indus. Co.*, 811 F. Supp 1061, 1065 (M.D. Pa. 1993).

There are two types of personal jurisdiction: general and specific. Each will be

addressed in turn.

### (1) Specific jurisdiction

Three factors determine whether the court has specific personal jurisdiction over a

party: (1) whether the defendants purposefully directed their activities at the forum; (2)

whether the litigation relates to at least one of those activities; and (3) if the first

requirements are met, the court may consider whether the exercise of jurisdiction

otherwise comports with fair play and substantial justice. *D'Jamoos ex rel. Estate of

Weingeroff v. Pilatus Aircraft Ltd.,* 566 F.3d 94, 102 (3d Cir.2009) (citing *Burger King,*

471 U.S. at 476). *See also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

> The animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable. Out-of-state residents who "exercise[] the privilege of conducting activities within a state . . . enjoy[] the benefits and protection of" the state's laws; in exchange, they must submit to jurisdiction over claims that arise from or relate to those activities.

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322 (3d Cir. 2007) (alterations and omission in original) (citations omitted) (citing *International Shoe*, 326 U.S. at 319 and *Burger King*, 471 U.S. at 475–76).

The first two parts of the test "determine whether a defendant has the requisite minimum contacts with the forum." *D'Jamoos,* 566 F.3d at 103. The threshold requirement is that the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987) (plurality opinion). The defendant's physical entrance into the forum is not necessary. *Burger King*, 471 U.S. at 476; *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir.1993). When a defendant has "deliberately" engaged in "significant activities" or created "'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Burger King*, 471 U.S. at 474, 475–76 (citations omitted) (quoting *World-Wide Volkswagen*

*Corp.*, 444 U.S. 286, 295 (1980); citing *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (1950)). Litigation against the defendant in that forum becomes foreseeable, and "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.*

Defendants argue that their contact with the Middle District of Pennsylvania is "negligible" and insufficient to make litigation against them foreseeable here. Deciding otherwise, they insist, would mean that bands like Paramore, "who perform concerts all over the country and the world, and whose only contact with a particular forum State is the occasional appearance for such a concert," would be subject to personal jurisdiction all over the country.[33]

Defendants rely on *Nike, Inc. v. Boy Toy, Inc.*, No. 90-0209, 1990 WL 96681 (D. Or. July 2, 1990). In that case, the Oregon District Court concluded it had specific personal jurisdiction over Madonna and Boy Toy, her promotion agency, but declined to base jurisdiction on the fact that Madonna had performed a concert in Oregon and distributed musical recordings there. *Id.* at *1, *3. Instead, the court based its finding on the fact that Boy Toy had "conducted a series of mail, telephone, and facsimile communications with NIKE representatives which had a significant impact on the business activities of NIKE, a resident of the State of Oregon." *Id.* at *3. The court also

---

[33] Doc. 20, at 9.

noted that an agent acting on behalf of Boy Toy and Madonna had initiated contact with Nike through an unsolicited phone call. *Id.* at *1.

*Boy Toy* is factually and legally distinguishable from this case. *Boy Toy* involved a contract dispute, not a copyright infringement action. Because Nike alleged that Madonna and Boy Toy had breached a contract to promote Nike products, the relevant jurisdictional facts were those concerning the negotiation and formation of the contract. The court rightly based its finding of personal jurisdiction upon defendants' contract-related communications, and not upon Madonna's concert performance in Oregon and the sales of her music there. *Id.* at *1, *3.

Plaintiffs urge application of the "stream of commerce" theory, which holds that a court may exercise specific personal jurisdiction when the defendant "made a deliberate decision to market its product in the forum state, then placed its product in the 'stream of commerce.'" *Amp Inc. v. Methode Electronics Inc.*, 823 F. Supp. 259, 263 (M.D. Pa. 1993). A plaintiff may establish the defendant's "deliberate decision to market" by showing that the defendant (1) designed the product for the forum state; (2) advertised the product in the forum state; (3) "established communication channels within the state"; or (4) "marketed its product through a distributor who served as the defendant's sales agent for that state." *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112 (1987) (plurality opinion)). Plaintiffs point out that defendants extensively advertised "The Only Exception" in Pennsylvania via public appearances and otherwise:

In the case at bar, Paramore Defendants deliberately decided to enter into the Pennsylvania market. Not only have Paramore Defendants advertised the Infringing Song in the forum state through radio, print, concert performances, and other forms of advertising, but they also have established consumer communication channels with the State. (Complaint ¶ 32). Upon information and belief, Paramore Defendants have conducted numerous radio interviews with Pennsylvania radio stations for the purpose of promoting their music, including the Infringing Song. Further, Paramore's website, www.paramore.net, directly communicates with fans located in Pennsylvania and allows these fans to purchase music and concert tickets, post discussions in forums, and upload videos and photos (Lavis Decl. at ¶¶ 14-21). Moreover, *Brand New Eyes*, the album that contains *The Only Exception*, is sold throughout Pennsylvania. The fact that CD sales to Pennsylvania consumers occur through sales agents of Paramore Defendants is immaterial.[34]

The alleged facts satisfy the stream-of-commerce test for personal jurisdiction because plaintiffs have alleged that defendants advertised "The Only Exception" in Pennsylvania.[35] Analogous case law supports this conclusion. In *Wellness Publishing v. Barefoot*, 128 F. App'x 266 (3d Cir. 2005), plaintiff Holt brought suit in New Jersey

---

[34] Plaintiff's Mem. in Opp'n, Doc. 22 at 14.

[35] The specific-jurisdiction analysis deliberately avoids discussion of plaintiffs' argument based on the accessibility of defendants' website in Pennsylvania. The relationship between the Internet and personal jurisdiction is a complex frontier of the law that is still developing, and the existence of alternate grounds for a dispositive ruling on the jurisdictional issue obviates the need to enter this thicket of vexing questions. As an aside, although plaintiffs have alleged that Paramore's website *allows* Pennsylvania residents to purchase albums, post in forums, and so on, they have not actually alleged that such purchases or posts have actually taken place, which undermines the likelihood of this website-based argument to succeed.

federal court, alleging that defendant DMC's promotion and distribution of books in New Jersey infringed on his copyright. *Id.* at 269. The court, in asserting personal jurisdiction over DMC, held that Holt's claims arose out of DMC's activity in New Jersey because DMC distributed the allegedly infringing books to New Jersey residents. *Id.* According to the Third Circuit, DMC should have expected to be subject to jurisdiction in New Jersey because DMC knowingly sent the books to New Jersey residents. *Id.*

Like DMC in *Wellness Publishing*, Paramore knowingly and intentionally marketed and sold CDs containing "The Only Exception" to Pennsylvania residents. In addition, the band traveled to Pennsylvania for live concerts, and all defendants engaged in other types of advertising and promotional activities, making it reasonably foreseeable that they could be subject to suit here for claims arising out of or related to the song. By undertaking and profiting from the performance, sale, and advertising of "The Only Exception" in Pennsylvania, defendants "avail[ed themselves] of the privilege of conducting activities within the forum State" and obtained the "benefits of protections of its laws." *Asahi Metal Indus. Co. v. Superior Court*, 408 U.S. 102, 109 (1987) (plurality opinion) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The nature of defendants' contacts in Pennsylvania provide a firm basis for exercising specific personal jurisdiction over defendants.

Furthermore, under the facts presented, it is clear that plaintiffs also satisfy the first two factors for the exercise of specific jurisdiction as outlined in *D'Jamoos*, *supra*:

(1) purposeful activities directed at the forum; and (2) claims that "arise out of or relate to" such activities. Plaintiffs allege, and defendants do not contest, that Paramore performed "The Only Exception" in Pennsylvania at two concerts within the last twelve months, including at Hershey Stadium within this district.[36] In connection with those performances, CDs containing "The Only Exception" were marketed and sold. Defendants also marketed and distributed the song in Pennsylvania via other means, including the sale of CDs, digital downloading, radio and television airplay.[37] Pennsylvania was directly targeted for sales, and defendants' actions are directly related to plaintiffs' claims of copyright infringement.

The final factor is consideration of whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (*quoting International Shoe*, 326 U.S. at 320). The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. If minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir.1998). "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy." *Grand Entm't Grp.,*

---

[36] *Id.* at 5. Compl. ¶32, Doc. 1.

[37] Compl. ¶32, Doc. 1.

*Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir.1993)."When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *See Asahi*, 480 U.S. at 114.

Under the facts presented, defendants have failed to show that this is the "rare" or "compelling" case in which the court's exercise of jurisdiction would be unreasonable or unfair. *See Burger King*, 471 U.S. at 477.

### (2) General jurisdiction

Defendants also contend that this court lacks general personal jurisdiction over them. General jurisdiction allows a court to adjudicate claims against a defendant even when the basis of the suit bears no relation to the defendant's contact with the forum. Because of the expansive nature of this jurisdiction, the "general jurisdiction threshold . . . is much higher than that for specific jurisdiction." *Allied Leather Corp. v. Altama Delta Corp.*, 785 F. Supp. 494, 498 (M.D. Pa. 1992) (citing *Reliance Steel Prods. Co. v. Watson, Ess, Mashall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1992) and *Compagnie Dex Bauxites De Guinee v. L'Union*, 723 F.2d 357, 262 (3d Cir. 1983)).

A court may exercise general jurisdiction when a defendant has a "continuous and systematic" connection with the forum that involves "extensive and pervasive" contacts. *Allied Leather,* 785 F. Supp. at 498 (quoting *Reliance Steel*, 675 F.2d at 589; citing *Horowitz Fin. Corp. v. Vacation Time Hilton Head, Inc.*, No. 90-4449, 1191 WL 192149,

at *2 (D.N.J. Sept. 23, 1991)). The court must evaluate the "nature and quality" of the contacts, considering factors including whether the defendant sells products in, maintains a sales staff in, derives significant revenue from, or advertises in the forum. *In re Chocolate Confectionary Antitrust Litigation*, 602 F. Supp. 2d 538, 566 (M.D. Pa. 2009) (citing *Clark v. Matsushita Elec. Indus. Co.*, 881 F. Supp. 1061, 1067 (M.D. Pa. 1993) and *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 262 (3d Cir. 2000). The defendant's contacts in the forum must be "central to the defendant's business"—not merely "important." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 438 (3d Cir.1987) (discussing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984)). Finally, the defendant "must maintain perpetual, abiding ties with the forum." *In re Chocolate*, 674 F. Supp. 2d 538 at 597 (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009)).

The relative percentage of business done within the forum compared to a company's overall portfolio is not determinative of the existence of general personal jurisdiction. As this court has observed:

> [G]eneral jurisdiction requires a strong nexus between the defendant's essential business activities and its contacts with the forum. In *Provident National Bank*, **a financial institution maintained in-forum depositor contacts with less than one-tenth of one percent of its total business portfolio.** *Id*. at 436. It also held an account with an in-forum institution through which it cleared customers' checks on a daily basis, and it sold certificates of deposit using an in-forum custodian on approximately sixteen occasions. *Id.* The Third Circuit upheld the exercise of general jurisdiction ***despite***

> **the relatively minor nature of these contacts because they were a core component of the defendant's banking business**. *Id.* at 438.

> In sum, general jurisdiction requires the defendant to possesses qualitative contacts with the forum that constitute "the bread and butter of [the defendant's] daily business," *[Provident*, 819 F.2d at 438], such that the its activities "approximate[ ] business presence" in the forum, *William Rosenstein & Sons v. BBI Prod., Inc.*, 123 F.Supp.2d 268, 274 (M.D.Pa.2000) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l* Inc., 223 F.3d 1082, 1086 (9th Cir.2000)).Fleeting activities such as periodic business trips, occasional purchases, and mere communication with in-forum entities hold relatively little sway in the general jurisdiction analysis. *Helicopteros*, 466 U.S. at 416–17, 104 S. Ct. 1868; *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008).

*In re Chocolate*, 674 F. Supp. 2d at 597–98 (emphasis added). "[G]eneral jurisdiction depends not on the mere quantity of contacts that defendant has with the forum but upon whether it engages in forum-related activity with the purpose of 'preserv[ing] and enlarg[ing] an active . . . market' in the forum." *Id.* at 597 n.24 (alterations and omission in original) (citing *Metcalfe*, 566 F.3d at 335). *See also Samad v. High Soc'y Magazine*, No. 82-26, 1983 WL 1752, at *3 (D.V.I. Nov. 1, 1983):

> To deny jurisdiction over such a defendant merely because its local sales constitute a small percentage of its total sales would be to deny a resident plaintiff the protection of the laws and courts of this Territory merely because the population of this Territory is limited. This the Due Process Clause does not require.

*Id.* at 557 (footnote omitted).

Defendants again rely on *Boy Toy*, noting that the Oregon District Court declined to hold that Boy Toy and Madonna had "continuous and systematic or substantial contacts with the State of Oregon" because their only ongoing contact with Oregon was "the distribution of records and tapes and the performance of an occasional concert." *Nike, Inc. v. Boy Toy, Inc.*, No. 90-0209, 1990 WL 96681, at *2 (D. Or. July 2, 1990). They cite no other cases in support of their position.

Plaintiffs again rely on *Amp, supra,* a patent infringement suit filed in this district. Methode argued that the court had no personal jurisdiction over it because it had no office in Pennsylvania and used distributors located elsewhere to ship its products to the state. *Id.* at 261, 268. The actual volume of sales was not clear from the opinion, but the facts showed that Methode's Pennsylvania sales were "not a significant percentage of overall sales," *id.* at 268. Even so, the court concluded that it had general jurisdiction over Methode, noting that Methode had sales to Pennsylvania customers that, although "representing a small part of its total sales," were "substantial" and "made on a regular basis." *Id.* at 267, 270. To the *Amp* court, the most important factor was that Methode's contacts with Pennsylvania had a "level of continuity" that belied its argument that "sales to Pennsylvania customers [were] merely sporadic or made more by chance than by any effort on its part." *Id.* at 267 (citing *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 298 (3d Cir. 1985)).

Here, although the proportion of defendants' overall sales in Pennsylvania is unclear, it is not the quantity, but the quality of the contacts which determines the existence of general jurisdiction. It is clear that defendants' presence in Pennsylvania is continuous and ongoing. Through their concert performances, radio play, sales, and advertising, defendants meet the test enunciated in *Amp*, that defendants "knowingly [ship] products into Pennsylvania on a regular basis such that its ties to the Commonwealth are continuous and substantial." *Id*. at 267–68.

Furthermore, defendants are in the music business. Sales of albums, songs, and concert tickets are the "bread and butter [of] their daily business." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434 (3d Cir. 1987). Their efforts to market Paramore's music in Pennsylvania – including "The Only Exception" – is not merely incidental to their core business, it *is* their core business. Accordingly, the undersigned concludes that defendants' contacts are sufficient to establish general personal jurisdiction.

### *(B) Venue*

Defendants' motion contains two venue arguments. It first requests dismissal under Rule 12(b)(3) based on improper venue and alternatively seeks transfer under 28 U.S.C. §1404(a) to the Middle District of Tennessee.

### (1) Is the Middle District of Pennsylvania an appropriate venue?

In copyright actions, the governing venue statute is 28 U.S.C. § 1400, which provides in part: "Civil actions, suits, or proceedings arising under any Act of Congress

relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." *Id.* § 1400(a). Under this statute, "a defendant 'may be found' wherever he is amenable to personal jurisdiction." *Donner v. Tams-Witmark Music Library, Inc.*, 480 F. Supp. 1229, 1234 (E.D. Pa. 1979) (citing *Battle Creek Equip. Co. v. Roberts Mfg. Co.*, 460 F. Supp. 18, 21–22 (W.D. Mich. 1978) and *Mode Art Jewelers Co. v. Expansion Jewelry Ltd.*, 409 F. Supp. 921 (S.D.N.Y. 1976)); *accord Elan Suisse Ltd. v. Christ*, No. 06-3901, 2006 WL 3838237, at *2 n.6 (E.D. Pa. Dec. 29, 2006) (citing *John Wiley & Sons, Inc. v. Fuchs*, No. 81-2594, 1981 WL 1389 (S.D.N.Y. Nov. 24, 1981) ("The copyright statute does not require a stronger presence of the defendant in the district to determine venue than to establish personal jurisdiction.") and *Kogan v. Longstreet*, 374 F. Supp. 47, 50 (N.D. Ill. 1974)); *Scholz Design, Inc. v. Annunziata*, No. 07-0853, 2007 WL 4526589, at *3 (D.N.J. Dec. 18, 2007) (citing *Elan Suisse*, 2006 WL 3838237, at *2 n.6). Section 1400(a) "makes no distinction between corporate defendants and individual defendants," so the existence of personal jurisdiction in a given district makes venue appropriate there as well. *Donner*, 480 F. Supp. at 1235.

Defendants' argument against venue, based on 28 U.S.C. § 1391, is unavailing. Section 1391 is the general venue statute; § 1400 governs specifically in copyright actions. Since specific statutes supersede application of general statutes, § 1400 applies. *Edmond v. United States*, 520 U.S. 651 (1997) (citing *Busic v. United States*, 446 U.S.

398, 406 (1980)); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 385 (1992) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)). Even if defendants are correct that their activities in the Middle District do not meet the "substantiality" requirement of § 1391(b)(2), venue is proper in the Middle District of Pennsylvania because defendants are subject to specific personal jurisdiction here.

**(2) Appropriateness of transfer to the Middle District of Tennessee**

The federal statute governing change of venue, 28 U.S.C. § 1404, provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* § 1404(a). The defendant bears the burden of proof when moving to transfer venue. *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

There is no dispute that this case could have been brought in the Middle District of Tennessee.[38] Accordingly, the analysis may turn directly to whether, "all relevant things considered, the case would be better off transferred to another district." *In re United States*, 273 F.2d at 25 (quoting *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)).

A district court has broad discretion over motions to transfer. *Shutte*, 431 F.2d at 25. In evaluating such a motion, a court must "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of

---

[38] *See* Doc. 22, at 19.

justice be better served by transfer to a different forum," keeping in mind that in most cases, "the plaintiff's choice of venue should not be lightly disturbed," and a defendant must establish "a strong preponderance in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995) (quoting 15 Charles A. Wright et al., Federal Practice and Procedure: Jurisdiction and Related Matters § 3847 (2d ed. 1986)) (noting that "there is no definitive formula or list of the factors to consider"); *Weinstein v. Friedman*, 859 F. Supp. 786, 788 (E.D. Pa. 1994) (citing *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 975 (D. Del. 1993) and *United States v. Brown Univ.*, 772 F. Supp. 241, 242 (E.D. Pa. 1991), *rev'd on other grounds*, 5 F.3d 658 (3d Cir. 1993)); *see also Shutte*, 431 F.2d 25 (3d Cir. 1970) (quoting *Ungrund v. Cunningham Bros., Inc.*, 300 F. Supp. 270, 272 (S.D. Ill. 1969)) ("[A] plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request . . . .").

The Third Circuit has compiled a list of factors that bear on motions to transfer venue. These factors fall into two categories: private interests and public interests. *Jumara*, 55 F.3d at 879. Private interests include (1) both the plaintiff's and defendant's forum preference; (2) whether the claim arose elsewhere; (3) the convenience of the parties "as indicated by their relative physical and financial condition"; (4) the convenience of the witnesses, but only to the extent that it bears on their availability for trial; and (5) the location of books and records. *Id.* (citing 1A pt. 2 James W. Moore &

Brett A. Ringle, Federal Practice ¶ 0.345[5] (2d ed. 1995) and Wright et al. §§ 3847–48,

3854). Public interests include:

> [E]nforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (internal citations omitted) (citing Moore & Ringle ¶ 0.345[5] and Wright et

al. § 3854). Not all factors will apply in a given case, and the court may address other

considerations if pertinent.

### (a) Private interests

### Factor (1): Plaintiff's choice of forum

Although a plaintiff's choice of forum usually enjoys a strong presumption in its

favor, this choice "is given less deference where the plaintiff chooses a forum outside of

its state of residence." *WellPet, LLC v. Midwestern Pet Foods, Inc.*, No. 09-1556, 2009

WL 5111790, at *2 (M.D. Pa. Dec. 16, 2009) (citing *EVCO Tech. & Dev. Co. v.*

*Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005) and *Samsung*

*SDI Co. v. Matsushita Elec. Indus. Co.*, 524 F. Supp. 2d 668, 632 (W.D. Pa. 2006)); *High*

*River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 498–99 (M.D. Pa. 2005)

(quoting *Reed v. Weeks Marine, Inc.*, 166 F. Supp. 2d 1052, 1057 (E.D. Pa. 2001)). Under

such circumstances, deference to plaintiff's choice of forum requires a "strong showing

of convenience." *Shirley v. First Comp Ins.*, No. 10-0476, 2010 WL 2079752, at *2 (E.D.

Pa. May 19, 2010) (citing *Windt v. Quest Commc'ns Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008) (discussing *forum non conveniens*)).

In this case, because plaintiffs are all residents of Florida, their choice of forum does not receive the degree of deference that it otherwise would.

### Factor (2): Where the infringing activity took place

Arguing that the relevant actions took place in Tennessee, defendants liken this case to patent-infringement cases, in which the "preferred forum is that which is the center of gravity of the accused activity." *Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002) (*quoting Renzetti, Inc. v. D.H. Thompson, Inc.*, No. 96-8520, at *3 (E.D. Pa. May 2, 1997); citing *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1187–88 (N.D. Ill. 1983)); *accord Samsung SDI Co.*, 524 F. Supp. at 632 (quoting *Saint-Gobain*, 230 F. Supp. 2d at 660). The "center of gravity" is the district in which the alleged infringement occurred. *Saint-Gobain*, 230 F. Supp. 2d at 660. In a patent-infringement case, infringement occurs where important decisions about and development of the product took place; "limited sales activity" has no relevance. *See id.* ("Appropriate considerations include the location of a product's development, testing, research and production[, and] the place where marketing and sales decisions were made . . . ." (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 437, D.N.J. 1993)).

As noted, *Saint-Gobain* was a patent infringement case. Defendants ask the Court to extend the "center of gravity" analysis to this copyright infringement case, but have cited no authority to do so. Furthermore, as another court has noted:

> While the center of gravity inquiry is a useful one, this court should heed the warning that "the center of gravity test itself simply serves as a shorthand method for explaining that most of the parties, witnesses, documents, or other evidence are located in some other forum[.]" *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09-290, 2009 WL 3055300, at *2 (W.D. Pa. Sep. 21, 2009). Therefore, while the center of gravity inquiry is useful in considering the overall fairness of a transfer, it only [supplements] the *Jumara* factors.

*Zenith Prods. Corp. v. Design Home Solutions, LLC*, No. 10-148, 2010 WL 2136569, at *3 n.4 (E.D.Pa. May 24, 2010) (alteration in original).

Here, plaintiffs contend that their copyright on "Starlighter" is infringed anywhere and everywhere that "The Only Exception" is played, downloaded, sold, or performed live. According to the submissions of the parties, "The Only Exception" was created in Tennessee, recorded and finalized in California, and subsequently played and broadcast all over the country and the world. From this standpoint, the Middle District of Pennsylvania is an arbitrary choice of forum. *See Wellpet*, 2009 WL 5111790, at *2 (reasoning that nationwide distribution of an infringing product meant that the action "could have been brought in many of the United States' district courts").

As between Pennsylvania and Tennessee, this second factor weighs slightly in favor of transfer to Tennessee, since the allegedly infringing song was written in Tennessee.The ongoing infringement, however, allegedly is taking place equally in both districts.

**Factors (3), (4), and (5): convenience of the parties; convenience of the witnesses; and the location of evidence**

Defendants argue that their witnesses and evidence are in the Middle District of Tennessee, making that a more convenient forum. The individual defendants live in Tennessee, and have their business records there. Warner has offices in Nashville, Tennessee, but neither Warner nor Atlantic has an office in the Middle District of Pennsylvania.[39] Mark Mercado and Steve Robinson, two nonparty prospective witnesses, are residents of Florida and regularly conduct business in Tennessee but not Pennsylvania.[40] Both could testify to the "independent creation" of "The Only Exception," a critical point of testimony in a copyright-infringement case.[41] Another nonparty prospective witness, Jason Childress, is a resident of Tennessee and regularly conducts business there but not in Pennsylvania.[42]

According to defendants, their witnesses and evidence being in Tennessee shifts the balance in their favor on the convenience issue. They cite *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349 (S.D.N.Y. 2009), for the proposition that testimony and evidence that plaintiffs offer is "not as critical" as that offered by defendants in a

---

[39] Fattori Decl. ¶ 4, Jan. 11, 2011, Doc. 15-11.

[40] Mercado Decl. ¶¶ 2, 3, Jan. 12, 2011, Doc. 15-14; Robertson Decl. ¶¶ 2, 4, Doc. 15-8.

[41] Mercado Decl. ¶ 3, Doc. 15-4; Robertson Decl. ¶ 4, Doc. 15-8.

[42] Childress Decl. ¶ 2, Jan. 11, 2011, Doc. 15-9.

copyright-infringement action.[43] *Id.* at 367. It is true, as defendants point out, that it will be relatively easy for plaintiffs to establish their copyright and that most of the testimony and evidence will focus on defendants' activities.[44] However vital the testimony of defendants' witnesses may be, a convenience analysis involves more than simply calculating important witnesses' burden of travel.

As the Third Circuit made clear as long ago as 1995, the convenience of witnesses is relevant "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (1995) (citing 15 Charles A. Wright et al., Federal Practice and Procedure: Jurisdiction and Related Matters § 3851 (2d ed. 1986)). Defendants' witnesses have all averred that it would be "far more convenient" for them to testify in Tennessee than Pennsylvania, but nothing suggests that these witnesses would be unavailable at trial or that they would refuse to travel to Pennsylvania. Addressing a similar situation in 1986, this Court stated:

> Concededly, there may be some logistical difficulties in having witnesses testify in this forum. There is no indication, however, that these witnesses would be unable or unwilling to so testify. In any event, use of pre-trial depositions may alleviate this problem. . . .

---

[43] *See* Doc. 25, at 14–15 (discussing *Capitol Records*).

[44] *See* Doc. 25, at 13 (quoting *Archer Daniels Midland Co. v. ADM Consulting Servs.*, 1996 U.S. Dist. LEXIS 125, at *22 (N.D. Ill. Jan. 8, 1996)).

> While pertinent records and documents may be located in Texas, the
> court sees no reason why this documentation cannot be photographically
> reproduced and mailed to this forum.

*Kovatch Corp. v. Rockwood Sys. Corp.*, 666 F. Supp. 707, 709 (M.D. Pa. 1986) (Nealon,

C.J.) (internal citations omitted) (citing *Culbertson v. Ford Motor Co.*, 531 F. Supp. 406

(E.D. Pa. 1992), *Luca Oil Drilling Co. v. Gulf Oil Corp.*, 593 F. Supp. 1198 (W.D. Pa.

1984), and *Schmidt v. Leader Dogs for the Blind, Inc.*, 544 F. Supp. 42 (E.D. Pa. 1982)).

Personal transportation and information transmission are more readily available and

affordable than they were twenty-five years ago, making the reasoning of *Kovatch* all the

more applicable today.

Further, of the three nonparty witnesses that defendants put forth, two of them,

Mercado and Robertson, are residents of Florida, and are outside of the subpoena power

of both Pennsylvania and Tennessee district courts. The remaining nonparty witness,

Childress, was Paramore's business manager.[45] Defendants indicate that Childress could

testify to "Paramore's income and expenses from exploitation of the allegedly infringing

song"[46] – a topic that is irrelevant to the defense in this case, and in fact will only become

relevant if damages need be calculated. Defendants' two nonparty witnesses whose

testimony would be relevant are equally out of reach in both this and the proposed

transferee district; the remaining nonparty witness has testimony of only peripheral value.

---

[45] Childress Decl. ¶ 3, Doc. 15-9.

[46] Doc. 25, at 13.

These facts do not militate strongly in favor of transfer. Finally, the convenience of party witnesses carries little weight. *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 366 (S.D.N.Y. 2009) (quoting *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008)); *Pub. Util. Serv. Corp. v. Leggett & Platt, Inc.*, No. 08-1860, 2008 WL 4610241, at *4 (E.D. Pa. Oct. 16, 2008) (disregarding convenience of party witnesses).

Plaintiffs, for their part, have all submitted declarations that state that the Middle District of Pennsylvania is a convenient forum for them.[47] They regularly conduct business in Pennsylvania.[48] Their manager regularly conducts business and has an office in Pennsylvania; their public-relations firm is there as well.[49] Transferring to the Middle District of Tennessee, they say, would impose a "vexatious and oppressive burden" because they conduct no regular business in that district and litigating there would incur greater expense.[50] They have not identified any nonparty witnesses that they would expect

---

[47] Reitter Decl. ¶ 4, Feb. 1, 2011, Doc. 24, at 25; Wise Decl. ¶ 4, Feb. 1, 2011, Doc. 24, at 28; Maloney Decl. ¶ 4, Feb. 1, 2011, Doc. 25, at 31; Dube Decl. ¶ 4, Feb. 1, 2001, Doc. 24, at 34. Plaintiffs also indicate that their legal counsel resides in Pennsylvania, but the convenience of counsel is not a relevant factor in this analysis. *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973).

[48] Reitter Decl. ¶ 5, Doc. 24, at 25; Wise Decl. ¶ 5, Doc. 24, at 28; Maloney Decl. ¶ 4, Doc. 25, at 31; Dube Decl. ¶ 4, Doc. 24, at 34.

[49] *Ids.* ¶¶ 6, 7.

[50] *Ids.* ¶¶ 12–14.

to testify, nor do their asseverations of greater convenience in Pennsylvania include any specific or compelling details.

Although these declarations do not constitute the "strong showing of convenience" necessary for plaintiffs' choice of forum to receive much deference, plaintiffs have managed at least some showing. *Shirley v. First Comp Ins.*, No. 10-0476, 2010 WL 2079752, at *2 (E.D. Pa. May 19, 2010) (citing *Windt v. Quest Commc'ns Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008) (discussing *forum non conveniens*)). Taking the contents of their declarations as true, plaintiffs can conveniently litigate in Pennsylvania but not in Tennessee. Transferring to Tennessee "would merely shift the inconvenience" from defendants to plaintiffs. *Kovatch*, 666 F. Supp. 709 (quoting *Aquarium Pharms., Inc. v. Indus. Pressing & Packaging, Inc.*, 358 F. Supp. 441, 446 (E.D. Pa. 1973)). When there is an "equitable standoff" of this sort, the convenience factor defaults to leaving plaintiff's choice of forum undisturbed.[51] *Id.*

### (b) Public factors

Few of the public factors metioned in *Jumara* bear on this case. A judgment will be equally enforceable whether made by a court in Pennsylvania or Tennessee. The Court is aware of no practical considerations that would affect the ease, expeditiousness, or

---

[51] Notably, *Kovatch* involved an action filed in Pennsylvania by a Pennsylvania resident, which distinguishes it from the case at bar. Its reasoning nonetheless applies, albeit without the underlying strong presumption favoring plaintiff's choice of forum.

expense involved in a trial in either forum. The public policies of the two forums do not differ in any way material to this dispute.

In terms of administrative efficiency and court congestion, United States Courts statistics suggest that a final judgment would likely happen sooner in the Middle District of Pennsylvania than the Middle District of Tennessee. In 2010, the median time between filing to disposition was 9.3 months in Tennessee and 6.0 in Pennsylvania. U.S. Courts, Federal Judicial Caseload Statistics (Mar. 31, 2010), http://www.uscourts.gov/ Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2010/tables/C05 Mar10.pdf. Transfer to the Middle District of Tennessee would mean that the parties could expect to wait more than three months longer to get this matter resolved. *But see High River Ltd. P'Ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 499 (M.D. Pa. 2005) ("[A]llowing an action to proceed in a forum simply because it is less congested and presumably more capable of disposing of the case quickly would invite forum shopping.").

Plaintiffs argue that the Middle District of Pennsylvania has a "substantial interest in resolving copyright infringement disputes occurring within the Commonwealth," which is no doubt true, but the record does not show that the alleged infringement "occurred" here. Rather, "The Only Exception" was written in Tennessee, the individual defendants reside there, all defendants conduct business there, and many of their records are stored there. Nothing related to the creation of the allegedly infringing song occurred here, and plaintiffs reside elsewhere. As defendants argue, these facts combine to give the

Middle District of Tennessee a significantly greater interest in this case than this district

has. *See, e.g.*, *High River*, 353 F. Supp. 2d at 499 (noting that Pennsylvania had no

interest in the controversy even though some of the witnesses resided there and some

relevant events took place there; many parties, witnesses, and relevant documents were in

New York); *Intria Corp. v. Intira Corp.*, No. 00-7198, 2000 WL 1745043, at *8

(S.D.N.Y. Nov. 27, 2000) (interests of justice favored transfer to California when

defendant's principal place of business was located there, and the "operative events" of

the dispute took place there); *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481,

501 (D.N.J. 1998) (when New Jersey was the location of "[n]one of the acts resulting in

the commencement" of the case, it had little interest in the dispute).

### (c) General considerations and overview

To review the preceding analysis: plaintiffs' chosen forum, the Middle District of

Pennsylvania, is far from where they reside in Florida. The individual defendants live in

Tennessee. The creation of the allegedly infringing song took place in Tennessee.

Convenience is largely a wash. Dockets tend to move faster here than in the Middle

District of Tennessee, but the relative speed of the dockets carries slight weight. The only

aspect of the venue-transfer inquiry resolving strongly one way or the other is the interest

that the Middle District of Tennessee has in the outcome of this litigation, which is

substantially greater than the interest of this forum.

The interests of justice, which include a given forum's interest in a dispute, constitute an "extremely important" factor in considering a motion to transfer. 15 Charles A. Wright et al., Federal Practice and Procedure: Jurisdiction and Related Matters § 3854 &n.2 (2d ed. 1986)) (collecting cases). Because this factor favors transfer, and because plaintiffs' choice of forum is due little deference, the most appropriate conclusion is that this case should be transferred to the Middle District of Tennessee.

## IV. Conclusion

Based on the foregoing discussion, it is recommended that this Court DENY defendants' motion to dismiss for lack of personal jurisdiction; DENY defendants' motion to dismiss for improper venue; and GRANT defendant's motion to transfer this case to the Middle District of Tennessee.

Signed on May 18, 2011.

_____
MILDRED E. METHVIN
UNITED STATES MAGISTRATE JUDGE