IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RICHARD WISE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 3:11-cv-00572 |
| | ) | Judge Nixon |
| v. | ) | Magistrate Judge Brown |
| | ) | |
| HAYLEY WILLIAMS, et al., | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court is a Motion for Expenses Incurred by Plaintiffs' Failure to Attend a Deposition ("Motion for Expenses") filed by Defendants Hayley Williams, Josh Farro, Taylor York, Jeremy Davis, Zac Farro, Fueled by Ramen, Warner Music Group, and Atlantic Records. (Doc. No. 77.) Magistrate Judge Brown issued a Report and Recommendation ("Report") recommending that the Court grant Defendants' Motion for Expenses. (Doc. No. 94.) Plaintiffs Richard Wise, Richard Reitter, Joshua Maloney, and Stephen Dube have filed an Objection to the Report (Doc. No. 95), to which Defendants filed a Response (Doc. No. 96). For the reasons below, the Court **ADOPTS** the Report and Recommendation.

**I.    BACKGROUND**

*A. Procedural background*

Plaintiffs filed their Complaint on October 8, 2010, bringing one claim of copyright infringement under 17 U.S.C. § 101, *et seq.* and one state-law claim of conspiracy to commit copyright infringement. (Doc. No. 1 ¶¶ 38–54.) Over the next five months, both parties filed a number of motions relating to the two claims. On March 20, 2012, Plaintiffs filed a Notice of Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(a)(i). (Doc. No. 69.) Defendants

1

filed an objection on the same day (Doc. No. 70), to which Plaintiffs filed a Reply (Doc. No. 71). On March 23, 2012, the Court ordered that dismissal pursuant to Rule 41(a)(1)(A)(i) was inappropriate, and that Plaintiffs should either file a stipulation under Rule 41(a)(1)(A)(ii) or file a motion pursuant to Rule 41(a)(2) addressing attorney's fees and costs, should Plaintiffs still seek dismissal. (Doc. No. 72.)

On April 11, 2012, Plaintiffs filed a Motion for Order Dismissing the Case Pursuant to Federal Rule of Civil Procedure 41(a)(2) (Doc. No. 73), to which Defendants filed a Response on April 25, 2012 (Doc. No. 75). Plaintiffs filed a Reply on May 9, 2012. (Doc. No. 82.) On April 25, 2012, Defendants filed the instant Motion for Expenses (Doc. No. 77), to which Plaintiffs filed a Response on May 9, 2012 (Doc. No. 83). On June 1, 2012, the Court granted Plaintiffs' Motion to Dismiss and dismissed the case without prejudice. (Doc. No. 85.) The Court also referred the Motion for Expenses to Magistrate Judge Brown for a Report and Recommendation. (*Id.*)

On June 25, 2012, Defendants submitted a Prehearing Submission with a claim for expenses incurred (Doc. No. 92), filed with one exhibit (Doc. No. 92-1), to which Plaintiffs filed their own Prehearing Submission in response on July 2, 2012 (Doc. No. 93). On August 22, 2012, Magistrate Judge Brown issued his Report recommending that the Court award the fees and expenses requested by Defendants. (Doc. No. 94.) On September 4, 2012, Plaintiffs filed an Objection to the Report (Doc. No. 95), to which Defendants filed a Response (Doc. No. 96).

    *B. Factual Background*

On February 8, 2012, Plaintiffs noticed the deposition of two defendants scheduled to take place on Tuesday, March 20, 2012, in New York. (Doc. No. 76 ¶ 2.) On February 21, 2012, Defendants noticed the depositions of the five Plaintiffs and their manager, scheduled to

take place from March 21 to 23, 2012, in Harrisburg, Pennsylvania. (*Id.* ¶ 3.) Jay Bowen, counsel for Defendants, flew from Nashville to New York on Sunday, March 18, and met with the first two deponents on Monday, March 19, to prepare them for their depositions the following day. (*Id.* ¶ 2.) One of the deponents, Steve Robertson, flew from Florida to New York solely for the deposition. (*Id.* ¶ 6.)

On March 19, 2012, at 1:42 p.m.[1], Todd Shill, Plaintiffs' attorney, emailed Bowen to inform him that Plaintiffs might be willing to consider a settlement based upon their review of Defendants' discovery responses, and inquired about Defendants' willingness to settle. (Doc. No. 76-1.) At 3:00 p.m. that same day, Shill emailed Bowen again, this time to state that "in light of the discovery responses we recently received, we have determined that the [New York] depositions . . . are no longer necessary." (*Id.*) At 4:44 p.m., Bowen responded that he would advise his clients of the cancellation and that he intended to go forward with the Pennsylvania depositions. (*Id.*) Shill replied and inquired again about the possibility of a settlement, to which Bowen responded by telling Shill to make an offer, reiterating the continued need for the Pennsylvania depositions. (*Id.*) At 5:01 p.m., Shill made a settlement offer. (*Id.*) Shill made one more attempt to settle the next morning, March 20, leaving the offer open until noon. (*Id.*) Bowen responded the same morning at 10:11 a.m., rejecting any possibility of a settlement and stating that "my orders are to proceed with the PA depos. Maybe we should talk when I see you tomorrow." (*Id.*)

Later that day, while Bowen was on a train from New York to Pennsylvania, he received

---

[1] As mentioned in the Report, the timing of some emails is confusing, possibly due to the fact that Nashville is in a different time zone than New York and Pennsylvania. Thus, based on the timestamp, some emails appear to have been sent either before or after others, when in fact the opposite is true.

an email from Shill (*id.*) advising that Plaintiffs had filed a Notice of Dismissal. (Doc. No. 76 ¶ 10.) Bowen responded at 2:01 p.m., stating that Plaintiffs could not nonsuit because an answer to Plaintiffs' Complaint had already been filed, and adding that he "expect[ed] Gadd to be there for his depo tomorrow, as your 41 notice is ineffective." (Doc. No. 76-1.) Shortly thereafter, in the final email between the attorneys regarding the depositions, Shill stated, "There is no longer a need for any depositions in this case as our clients have determined that they simply cannot shoulder the risk in this case any further in light of what they just learned in discovery." (Doc. No. 76-1.) Neither party appeared for the Pennsylvania depositions on March 21. (Doc. No. 76 ¶¶ 10–11.)

Defendants request attorney's fees in the amount of $6,345.00 and expenses in the amount of $1,855.91, for a total of $8,200.91, for travel and preparation for the New York and Pennsylvania depositions. (Doc. No. 92-1.) Specifically, Defendants request expenses for their airfare to New York and from Pennsylvania, the cost of Bowen's train ticket from New York to Pennsylvania, and the cost of their hotels in both New York and Pennsylvania. (*Id.*)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 30(g) states that "[a] party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to: (1) attend and proceed with the deposition; or (2) serve a subpoena on a nonparty deponent, who consequently did not attend." Under this rule, "[t]he decision of whether to impose discovery sanctions . . . is within the discretion of the Court." *Keats v. United States*, 121 F.R.D. 53, 53–54 (E.D. Mich. 1988) (citing *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 532 (9th Cir. 1983)). A party can constructively fail to attend a deposition by providing late notice of a cancellation. *See Spalding*

4

*& Evenflo Cos., Inc. v. Graco Metal Prods., Inc.*, 1992 WL 109092, at *4 (N.D. Ohio Feb. 14, 1992) (ordering the defendant and noticing party to pay costs incurred by the plaintiff, when the defendant cancelled a deposition in another city after the plaintiff's attorney had already traveled there).

While Rule 30(g) can be invoked only if the *noticing* party fails to attend a deposition, a court possesses the authority to order sanctions under Rule 37(d)(1)(A)(i), if "a party, or a party's officer, director, or managing agent . . . fails, after being served with proper notice, to appear for that person's deposition."[2] Fed. R. Civ. P. 37(d)(1)(A)(i). A court must award reasonable expenses, including attorney's fees, caused by a party's failure to act unless "the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

Thus, the analysis under both Rules is the same—the Court must determine whether Plaintiffs were substantially justified in their late cancellation of both the New York and Pennsylvania depositions, and whether Defendants are entitled to all requested fees and expenses under Rule 37(d)(1)(A)(i). *See*, *e.g.*, *Dow Chem. Co. v. Reinhard*, 2008 WL 161917, at *2 (E.D. Mich. Jan. 15, 2008) ("Under Federal Rule of Civil Procedure 37(d)(3), the Court will direct Dow Chemical and Liveris to pay the reasonable expenses caused by Liveris' failure to appear for his deposition, to the extent that Reinhard . . . could not reasonably have avoided those

---

[2] In the Motion for Expenses, Defendants limited their request to fees incurred by Plaintiffs' cancellation of the New York depositions (Doc. No. 77), as Defendants noticed the Pennsylvania depositions (Doc. No. 76 ¶ 3). In Defendants' Prehearing Submission and accompanying Exhibit, however, Defendants also seek an award for the expenses incurred with the cancellation of the Pennsylvania depositions. (Doc. Nos. 92; 92-1.) Since Plaintiffs did not notice the Pennsylvania depositions, the consequent fees sought by Defendants are more properly addressed under Rule 37(d)(1)(A)(i).

expenses after receiving notice from counsel for Dow Chemical and Liveris.").

## III. ANALYSIS

Plaintiffs raise one objection in their Objections to the Report. (Doc. No. 95.) Plaintiffs do not address the reasonableness of the fees requested, but instead claim that Judge Brown improperly ignored Plaintiffs' contention—raised in their Prehearing Submission (Doc. No. 93)—that the deposition costs incurred by Defendants were a direct result of Defendants' failure to adhere to discovery deadlines, and that Plaintiffs are therefore not responsible for such costs. (Doc. No. 95 at 6–7.)

On February 8, 2012, Plaintiffs sent their first set of interrogatories and first request for production of documents to Defendants. (Doc. No. 95 at 2.) Pursuant to Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2), Defendants were required to answer the interrogatories and produce the relevant documents on or before March 12, 2012. (*Id.*) Plaintiffs state that Defendants did not provide the documents and interrogatory responses until March 16, 2012, at 8:40 p.m., and provided supplemental documents on March 19, 2012, only one day before the New York depositions. (*Id.* at 3.) Plaintiffs assert that an email contained within those documents indicated that Steve Robertson, one of the New York deponents, played no part in the creative process of the allegedly infringing song, which cast doubt on Plaintiffs' "access" theory of the case. (*Id.* at 4–5.) In their Prehearing Submission and Objections, Plaintiffs state that after this development they "immediately emailed Defendants' counsel, advising him that Plaintiffs had cancelled the scheduled depositions and intended to seek a dismissal." (*Id.*; Doc. No. 93 at 3.)

Plaintiffs contend that, had Defendants adhered to the March 12 deadline for discovery responses, Plaintiffs likely would have cancelled the depositions and sought voluntary dismissal

before March 20, 2012, meaning Defendants would not have incurred any of the requested costs and fees. (*Id.* at 6.) Plaintiffs also contend that Defendants have not offered any explanation regarding their failure to respond by the March 12 deadline, and that a discussion of Defendants' "dilatory conduct" is "noticeably absent from [Judge Brown's] report." (*Id.* at 5.)

In response, Defendants first assert that Judge Brown did in fact consider Plaintiffs' alleged justification for the late cancellation of the depositions because the issue was briefed and discussed during oral argument, and Judge Brown stated that he "consider[ed] the pleadings and oral arguments" of the parties before recommending that Defendants should be awarded the requested fees and costs. (Doc. No. 96 at 1–2.)

Defendants also attempt to refute the contention that Plaintiffs immediately cancelled the depositions and sought dismissal of the case after reading the referenced email, by noting (as did Judge Brown) that Plaintiffs did so only after first trying to reach a monetary settlement with Defendants. (*Id.* at 2.) Defendants finally assert that Plaintiffs either knew or should have known of the weakness of their "access" theory well before reading the email regarding Robertson's involvement because Defendants had repeatedly stated, in sworn declarations months before, that Plaintiffs' theory of access had no basis in fact. (*Id.*)

Contrary to Plaintiffs' assertion, Defendants have in fact addressed their late discovery responses. In their Response to Plaintiffs' Motion for Rule 41 Voluntary Dismissal, Defendants assert that Plaintiffs waited until just over thirty days before the scheduled depositions to issue written discovery. (Doc. No. 75 at 7.) Defendants additionally stated that it was disingenuous for Plaintiffs to complain of a few-day delay in receiving discovery documents, when Defendants issued written discovery as early as August 2011, and it took Plaintiffs six months to complete their document production. (*Id.*) Defendants claim that, in responding to discovery, they did not

7

raise Plaintiffs' six-month delay because Defendants had "allowed significant lead time" before beginning the depositions. (Doc. No. 92 at 3.)

Regarding the timing of discovery responses, the Court finds that Defendants' "pot calling the kettle black" argument—combined with their assertion that previous sworn statements conveyed the same information—persuasively rebuts Plaintiffs' alleged justification for the late cancellation of the depositions. Even without such an explanation, however, the Court agrees with Judge Brown's conclusion that Plaintiffs' attempt to negotiate a settlement up until the late morning of March 20, 2012, is the determining factor in holding Plaintiffs responsible for all of the costs and fees requested. (Doc. No. 94 at 7.) Though Plaintiffs portray their attempt to nonsuit as occurring immediately after receipt of the discovery documents on March 19, this claim is belied by the fact that Plaintiffs filed for voluntary dismissal only after spending almost twenty-four hours trying to settle with Defendants.

Shill cancelled the New York depositions the evening before they were scheduled to take place, after Bowen and the deponents had already traveled there for the sole purpose of attending the depositions. When cancelling the New York depositions, Shill was aware of the weakness of Plaintiffs' claim. But in the subsequent email exchange between the two attorneys, Bowen repeatedly referenced his continued intent to take the Pennsylvania depositions, and Shill never indicated that the depositions should be cancelled. Instead he tried to reach a settlement with Defendants. The first time Bowen received any notice of a change in the Pennsylvania depositions was when Shill unilaterally cancelled them after filing a voluntary notice of dismissal. By that time, however, Bowen had already boarded a train for Harrisburg.

The Court finds it was not imprudent for Bowen to travel to Pennsylvania as planned when, as of the day before the depositions were scheduled, he had no indication that Plaintiffs

8

would cancel or attempt to nonsuit. When Bowen left New York, he and Shill had merely been in the process of determining whether a settlement would be viable. It was not until Shill's last email to Bowen on March 20, 2012, that Shill finally cancelled the Pennsylvania depositions and warned that Bowen would "be making the clear choice to incur more costs" if he appeared for the depositions beginning on March 21. (Doc. 76-1.) This warning came, however, after Bowen had already taken the train to Pennsylvania. Bowen did not in fact appear for the depositions, but instead flew back to Nashville the morning of March 21.

Because Plaintiffs unjustifiably cancelled the depositions in New York after Bowen and the deponents had already traveled there, Plaintiffs constructively failed to attend the New York depositions. (Doc. No. 94 at 3–4.) Additionally, because Plaintiffs filed for voluntary dismissal only after failing to reach a settlement offer with Defendants, and after Bowen was already en route to Pennsylvania, Plaintiffs constructively failed to attend the Pennsylvania depositions as well. Finally, Judge Brown found that the fees and expenses requested by Defendants were reasonable, and the Court finds Judge Brown's reasoning and conclusion are reasonable.

**IV. CONCLUSION**

For the reasons above, the Court **ADOPTS** Judge Brown's Report and Recommendation, and **GRANTS** Defendants' Motion for Expenses.

It is so ORDERED.

Entered this the  28th      day of March, 2013.

 _____
 JOHN T. NIXON, SENIOR JUDGE
 UNITED STATES DISTRICT COURT